arguing on the sleeping village facade with Ms. Diacke Relevant for agency Good morning Good morning, Your Honor May it please the court My name is Julie Gaffke. I represent the appellant, Leanne Burns and I will be reserving five minutes for rebuttal, please The issue on appeal today is very narrow very straightforward, I would submit. It's whether the district court erred in dismissing the appellant's retaliation claim under federal law, Title VII, and under the Michigan Elliott Larson Civil Rights Act where there exists a factual dispute as to pretext I'll go through a brief recitation of the facts unless you want me to waive that This case involves an African-American male He's a police officer currently with the city of Saginaw after being reinstated when he was discharged in February of 2010. He began his employment in May of 1999 and what's notable from the record is that from May of 1999 until early 2009 10 years, he had an excellent employment record He had not been subjected to disciplinary action He had not been suspended, not been subject to any type of adverse action like he was the subsequent 10 months after March of 2009 What happened in March of 2009 is that a sergeant, Sergeant Anjanette Tuer contacted the plaintiff, the appellant in this case after there had been a race discrimination verdict against the city of Saginaw, alleging that there was discrimination against a black male an officer McDoyle, and she called the appellant up and asked her asked him to support the city of Saginaw and say that the city of Saginaw does not retaliate against its black male officers. The appellant refused and she responded in a racist and retaliatory way, which is part of the record so I don't need to repeat it Subsequently there were a series of adverse actions and admittedly for purposes of this appeal, again this appeal is very narrow Those are background facts. I think it shows the motivations of the city of Saginaw, their conduct The client is still employed? Yes, well he was reinstated after his discharge was... Right now he's still working there? Yes, your honor. Never had a gap in pay? We're just talking background now, right? My understanding was he was reinstated with pay. And so what is relevant to this case, this series of adverse actions and harassing treatment in December of 2009, early December the appellant filed a formal complaint with the Equal Employment Opportunity Commission. The city received notice of that and less than two months later the appellant was discharged from his employment. The sole reason given was the allegation that he fraudulently issued a traffic citation and he perjured himself. Those were the reasons stated in the discharge notice What's relevant about that is that the internal investigation into that showed that they didn't know whether or not, they could not determine whether or not the ticket had been issued. They also indicated in the internal investigation that the individual who came forward and claimed, the citizen who claimed he got the false ticket was not necessarily found to there was no way to validate his claim, although the discharge notice alleged there was. And third, the internal investigation said that the appellant was truthful. There's no way to determine whether that he was not truthful. In other words, there was no finding that he had lied. Yet the discharge notice indicated that he had perjured himself. Why is that relevant? Because pretext. This gets to the appeal in this matter. The appeal relates to the district court finding that there's no factual dispute of pretext. Just so I understand how narrow this case is, it just deals with this one firing based on retaliation. Is that right? Yes, your honor. We're alleging... And he was reinstated with back pay with respect to that firing for a different reason. He was reinstated over a procedural issue but arguably, but yes, yes, he was reinstated. There was not a finding on the merits. There's a lot of other stuff in the briefs and in the record of other things that have happened in background and foreground and so forth, but basically all we're talking about is whether this firing, which was later undone, was based on retaliation for complaints about some other things. Right. In December, there was an EEOC complaint for race discrimination and retaliation. Within less than two months, he was discharged. And there is this thing about his having given a ticket with no basis, right? That was the allegation. And so the three reasons under this court's precedence that pretext can be found is one, there's no basis in fact. Two, that even if there is a basis in fact, it's not the motivating reason. Or three, that the reason given for the termination or the adverse deployment action is insufficient to justify it. The appellant in this case can show by any of those ways, and frankly by all of those ways, factual inferences that should lead to a conclusion that summary judgment should have been denied on the retaliation claims. First of all, the timing alone is quite sufficient. And the courts, this court has held that temporal proximity can be circumstantial evidence to show pretext. And certainly it shows pretext in this case. Second of all, there was no, my client, the appellant, denied that he issued the ticket fraudulently. And in fact, the ticket indicated that the individual was on his way to get his ticket. So that means that there was evidence in the record that showed that corroborated that the appellant actually spoke to this individual, that called into question that. Another officer told the appellant that his discharge was elevated from a suspension to a discharge because of his complaints, because he had made an EEOC complaint. But the EEOC complaint came before, did it not? Absolutely. That's why we're alleging retaliation, because the city had knowledge, the city had knowledge in December of 2009 that the appellant had complained, made a formal complaint with the EEOC. Then, less than two months later, the appellant was discharged. And was discharged for untrue reasons. The appellant testified he did issue the ticket, that he made a remark on the ticket as to the circumstances. The discharge notice said that he lied, yet the internal investigation showed that there was no reason to believe that he was being untruthful. The internal investigation showed that the citizen was not, there was no way to substantiate if he was telling the truth, yet the discharge notice claimed that he had been completely exonerated and truthful. And so there's disparities between the discharge notice and the actual investigation. And that shows that there is questions about the basis of the client, the appellant's termination. In addition to the statement being made that he was elevated from a suspension to a discharge because of his complaints. The temporal proximity, again, is very alone, should create a question of fact as to pretext. Yet we don't have just that. We have all of these other facts. And so the appellant has brought this appeal because it was error for the district court not to take the inferences, the factual inferences, in his favor. And not to deny summary judgment was error in this case. So I will address the court again, but we're asking that the decision on the retaliation claims be reversed, and this case be re-ended. Thank you. Thank you. Good morning. May it please the court, John Clark on behalf of the city of Saginaw. I had prepared to stay more involved, but I think I'm just going to touch on a few issues raised by my co-hosting counsel. Number one, it's important to point out that the decision-maker in this case was Mr. Darnell Early, then the city manager, who was an African-American, and recently just appointed as the emergency manager for Detroit Public Schools. In regards to the termination, first of all, Mr. Burns was interviewed in regards to that prior to filing his EEOC. So he was aware that there was an issue, he was being investigated by the Internal Affairs Department of the Saginaw Police Department, and lo and behold, he filed his EEOC subsequent to. It wasn't early December, it was December 29th, and that document's been submitted as part of the record. In regards to the termination itself, it was overturned by the City Civil Service Commission on the technicality. During the time that he was terminated, quote-unquote, his pay was never taken away. So he was reinstated, the pay was never taken away. My opposing counsel raises, you know, really three arguments that the court should look at. Number one is timing. Again, as I've just addressed, the EEOC complaint came after he was being investigated, and on the Nassar decision, temporal proximity in and of itself is not enough to establish a prima facie case of discrimination, and certainly not enough to establish a pretext. And I think that is especially true in this circumstance where the EEOC complaint came after, and we reference the Cooper v. City of North Olmstead decision that discusses a similar circumstance. Number two, she says that her client denies it. Okay, well, if you look at her appeal brief, about 80% of the references are her client's deposition testimony, and that really goes into a third argument, which is another officer told Mr. Burns that his termination was reduced to a suspension. Doesn't identify the officer, doesn't identify when it was said, doesn't identify the context of it, and certainly multiple cases exist, lower court reference decisions that indicate that hearsay cannot be the basis of a denial of summary judgment. Well, what about the legal issue with respect to your opposing counsel's argument as to whether a factual dispute as the pretext can go forward? Well, in regards to Mr. McComer, okay, again, I mean the three bases, no basis in fact, not the reason for the Mr. McComer is a third party. In fact, he's an investigator with the state of Michigan. He filed a complaint with the city manager indicating that he was issued a false ticket. That was investigated by the Saginaw Police Department, determined that Mr. McComer was at his office, he was logged into his computer, and was driving a different vehicle. Based on those facts, the city determined that he violated rules and regulations of the department and was disciplined. There is basis in fact, and in fact, the Michigan State Police also investigated that incident. The detective lieutenant in charge of that investigation determined there were violations of criminal law. However, the prosecutor in that case decided to not pursue criminal charges, unlike the snowplow incident that was kind of the initial issue here where Mr. Burns was investigated by the Michigan State Police, referred to the Saginaw County prosecutor, determined that there were violations of criminal law, in fact, he pled to a lesser charge. As to the legal issue that your opposing counsel is attempting to raise about whether a factual dispute as the pretext, how can be cited that addresses that one point? Well again, I mean in terms of the three arguments are the timing, which is the proximity case, which is the Nassar decision, and which again is buttressed by the Cooper versus North Homestead decision, which again says that when a plaintiff files an EEOC type action or takes other protected activity after they're aware of an investigation, it's basically null and void. Otherwise, any time an employee thought that they were in the crosshairs of their employer, once they became aware of that and then they filed an EEOC complaint or some kind of other activity, the employer would be forever barred from taking any type of adverse employment action because the plaintiff would point back and say, well you did this because of my protected activity. And in regards to the officer itself, I don't have the case in front of me, but there are decisions that say that he or say, and again this is referred to in her statements that another officer, again unidentified, told Mr. Burns that his termination was reduced, well I'm sorry, that his termination, that the situation regarding Mr. McComas was taken from a five-day to a termination because of his EEOC complaint. That's the allegation, that the discipline was more involved because of his EEOC. He says another officer told him that. Who the officer is, we don't know. The context of that discussion, and certainly that would be a hearsay statement and cannot be used to evade summary disposition. There were several other things that were complained about in the termination. Much of those, if not all those, were not addressed in the EEOC complaint and therefore were properly dismissed because they did not exhaust those administrative remedies available. In terms of the tour discussion, sergeant tour discussion, that apparently came after a jury verdict adverse to the city, completely unrelated to this case. Number one, that was never complained to the city at any time, even though Mr. Burns just a couple weeks later filed an internal complaint with the city complaining about other adverse actions. So that was never broached to the city. Number two, Ms. Tour denies that statement. Number three, that was never addressed in his EEOC complaint. Number four, Ms. Tour, while she was a sergeant in the department of higher rank than Mr. Burns, certainly was not a decision-maker, didn't have any authority to discipline or terminate him. So I think that that's simply a red herring and I think is without basis. We think that Judge Ludington got it right and we would request that the court affirm the lower court dismissal of the federal claim and the retaliation claim. And as noted, the two state claims of hostile work environment and discrimination are currently pending in the Saginaw Circuit Court as those were dismissed without prejudice. Any other questions I can address? Thank you very much. In the record at PD1755, you will find when you go there that the intake form with the Equal Employment Opportunity Commission was signed and dated by my client, the appellant, on December 9, 2009. And looking at the charge of discrimination... And he filed it when? That's when he made the complaint to the EEOC. And then what happens is the Equal Employment Opportunity Commission drafts a charge of discrimination based on the information from the complainant, the charging party, and then they send it to the charging party for signature. So there is somewhat of a process... While it's not dispositive, the investigation has at least been generated by that time. It's not true. The defendant, the appellee, the City of Saginaw, is citing a date of December 29 because that's the date the charge of discrimination is signed. But my client had already been there trying to... And what the appellee is suggesting is that the charging... Oh, I see. In the middle of December or something. Yeah, the charging party didn't even know about the investigation, didn't know the complaint had been made, regardless of whether it had been made. He didn't know. That wasn't the reason he made his EEOC charge. And in fact, if you look at the charge of discrimination, it doesn't say anything about being under investigation because he had no idea he was under investigation at the time. It related to being suspended. I'm just asking, was the complaint made about the false arrest? When did that start? That was made... I think Mr. McComber made it, according to the record, late November, early December. That's not to say he knew about it. He did not know. But it says, it's not dispositive perhaps, but it says something about how... At least the basis for the firing had started before he made his complaint, whether he knew about it or not. Right. The appellee's suggestion is that the complaint was used as a sword by the appellant because he knew about the complaint from Mr. McComber, but he did not know about it. I didn't take that. I just took that as a causation matter, as a whether this was discrimination matter. They didn't gin up this complaint because it was already perking. They may have promoted it and they might not have promoted it, but they didn't gin it up as a result of something that he hadn't done yet. Because it was already in the works at some level, even though he didn't know about it. The complaint had been made. Factually, though, Your Honor, I think you make a good point. The intervening factor is that he makes this charge of discrimination for race discrimination and then is discharged shortly thereafter. And we do have... He's discharged shortly thereafter based on something that happened and was complained about before. Which should have only been a suspension. According to Officer Vasquez... Turned out to be even less than a suspension. Yeah. Officer Vasquez tells the appellant, the chief said that because you're persisting in your complaints, the EEOC complaint, it's going to go from a five day suspension to a discharge. If it was okay to suspend him, just not okay to discharge him, and he was never discharged, what's his harm? Well, there is... He loses face and all of that, but he would have lost that from the suspension. He would not... The significance of the discharge, he was off for several months before being reinstated. I mean, it was later in the year before he was reinstated. There was a huge... Yeah, there was significant damage as a result, but Officer Vasquez told the plaintiff, the appellant, that it was being elevated to a discharge because of his complaints. Both Officer Vasquez and Chief Gerald Cliff are... Were employed with the city at the time. We're making the statement in the capacity as employees, so it's not hearsay under the federal rules of evidence. Moreover, it's a statement against Officer Vasquez's interest because he does not wanna be subject to retaliation. And finally, there is a catch all residual hearsay provision, which would have allowed the court to consider that. But the court disregarded that statement, which was made to the plaintiff appellant at the time of the discharge decision, and disregarded the other compelling evidence that, taken in the light, most favorable to the plaintiff, should have denied summary judgment. Thank you. Thank you, and the case is submitted. Thank you. There being no further...